UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | NO. 2:07-CR-51 |
| | ) | Greer/Inman |
| ISABEL DELGADO | ) | |
| JUVENTINO RIOS CASTRO | ) | |

## REPORT AND RECOMMENDATION

Defendant Castro has filed a motion to suppress all evidence obtained as a result of the search of the premises at 893 Rippetoe Avenue, in Morristown, Tennessee, on May 8, 2007. (Doc. 20). The co-defendant Delgado has been allowed to join in that motion. The motion has been referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on July 24, 2007. No evidence was presented; the issue is one of law only, involving the form and content of a state search warrant and the affidavit filed in support thereof.

On May 8, 2007, Detective Sergeant Chris Blair of the Morristown Police Department submitted an application to Criminal Court Judge John F. Dugger for the issuance of a search warrant for the premises at 893 Rippetoe Street, in Morristown, Tennessee. Detective Blair's affidavit reads as follows:

AFFIANT, Detective Sergeant Chris Blair, having been duly sworn, states the following facts:

    1. I am a Detective Sergeant with the Morristown Police Department assigned to conduct

narcotics and vice investigations in Morristown, Tennessee, having been so employed for the past four and one half years; ten years prior to that I worked for the Morristown Police Department's Patrol Division. I have received specialized training in narcotics and vice investigations from the Morristown Police Department, as well as attended specialized schools involving both narcotics and vice investigations. I have also received certification in Clandestine Lab eradication. During my employment, I have participated in at least 400 narcotics investigations. I have worked in an undercover capacity to purchase narcotics, executed search warrants, seized evidence, arrested suspects and conferred with prosecutors and other law enforcement officers in my community regarding narcotics and vice investigations. As a result, I have gained considerable experience.

2. An undercover agent with the Morristown Police Department's Narcotics/Vice Division did, within the past five days purchase four and one half (4 1/2) ounces of powder cocaine for the amount of $3,300 from a Hispanic male known to law enforcement as "Marguerito" LNU in front of the Las Palmitas convenience store, 855 Lincoln Ave. Morristown, Tennessee, Hamblen County. The purchase was monitored and controlled by narcotics detectives. The U/C agent was wired with a device which allowed the other agents to monitor and thus control the entire transaction. Prior to the transaction, the U/C agent was given currency which had been photocopied prior to the transaction to purchase the narcotics. When the transaction was completed, the agents continued to maintain audio contact with the U/C agent.

3. In addition to the monitored transaction which was made by the undercover agent, the suspect known as "Marguerito" was observed coming directly from a residence at 893 Rippetoe Street, Morristown, Tennessee, Hamblen County to the location of the narcotics transaction. Immediately following the narcotics transaction, the suspect known as "Marguerito" did return to the residence at 893 Rippetoe Street with the $3,300 in photocopied currency. Prior to the transaction there have previously been reports of illegal narcotic activity made to the Narcotics/Vice Division from other local and federal agencies.

4. Based on my experience, training, and the aforementioned facts, I, Det. Sgt. Chris Blair, believe that the information presented gives probable cause to believe that illegal narcotics are present and being sold from the residence in question, 893 Rippetoe Street, Morristown, Tennessee, Hamblen County.

5. Furthermore, based on my experience and training, I have found that persons who use, manufacture and/or distribute illegal narcotics frequently maintain in their residences, outbuildings, and vehicles the following items: packaging materials used to manufacture and package scheduled drugs, receipts, records and other documentation which reflect the sales or usage of scheduled drugs, paraphernalia used to package, store, contain and weigh scheduled drugs, cash and/or property that are proceeds from the sale and/or manufacturing of scheduled drugs and firearms. All of these items constitute contraband; property used or intended to be used in the commission of a drug offense which is in violation of the laws of the State of Tennessee.

6. Based on my experience and training and information gained in this investigation by members of the MPD's Narcotics/Vice Division, I, AFFIANT, Det. Sgt. Chris Blair believe that the persons staying and/or residing in the residence in question of 893 Rippetoe Street, Morristown, Tennessee, Hamblen County, TN, are manufacturing, using and/or selling

narcotics from the target location. The location and description of the residence in question is as follows: From 100 West 1st North Street, travel east on West 2nd North Street under .1 miles; turn right (south) onto Cumberland Street and proceed .2 miles; turn right (west) onto West Morris Blvd and proceed .7 miles to Sulphur Springs Road which is located on the left side of West Morris Blvd. directly across from the Morristown Ford. After turning left (south) onto Sulphur Springs Road, proceed 1 mile; turn left (east) onto Red Fox Avenue. Proceed less than .1 mile; turn right (south) onto Holdway Street. Proceed .1 mile; turn left (east) onto Rippetoe Avenue. The residence of 893 Rippetoe Ave is located immediately on the right (south-east corner of Rippetoe Ave.) at the intersection of Holdway Street and Rippetoe Avenue. The house is a white and pink-colored residence with black shudders [sic]. At the end of the driveway there is a covered car port. From the concrete driveway, which is located on the left side of the residence, is a side entrance door. There is a storm door and a solid white door with four small windows in the front of the house facing Rippetoe Ave.

AFFIANT therefore asks that a search warrant be issued to search the aforesaid residence, to include vehicles, outbuildings, and the property curtilage, along with any persons present on the premises.

Chris Blair, Signature of AFFIANT
Sworn to and subscribed before me this 8 day of May, 2007.
John Dugger, Judge

Judge Dugger issued the search warrant based on Detective Blair's affidavit, and that search warrant is as follows:

TO THE SHERIFF, OR ANY DULY AUTHORIZED LAW ENFORCEMENT OFFICER OF HAMBLEN COUNTY:

Proof having been made before me through a sworn affidavit by Det. Sgt. Chris Blair, that there is probable cause to believe that illegal narcotics are being stored and sold at the address of 893 Rippetoe Street, Morristown, Tennessee, Hamblen County. Furthermore, I believe it is probable that within the residence there will be these scheduled drugs, along with paraphernalia used to manufacture, package, store, contain and weight drugs, cash and/or property that are proceeds from the sale and/or manufacturing of schedule drugs and possibly firearms. The property to be searched includes any persons, vehicles, outbuildings and property curtilage present at 893 Rippetoe Street, Morristown, Tennessee, Hamblen County. The location and description of the residence in question is a s follows: From 100 West 1st North Street, travel east on West 2nd North Street under .1 miles; turn right (south) onto Cumberland Street and proceed .2 miles; turn right (west) onto West Morris Blvd and proceed .7 miles to Sulphur Springs Road which is located on the left side of West Morris Blvd. directly across from the Morristown Ford. After turning left (south) onto Sulphur Springs Road, proceed 1 mile; turn left (east) onto Red Fox Avenue. Proceed less than .1 mile; turn right (south) onto Holdway Street. Proceed .1 mile; turn left (east) onto Rippetoe Avenue. The residence of 893 Rippetoe Ave is located immediately on the right (south-east corner of Rippetoe Ave.) at the intersection of Holdway Street and Rippetoe Avenue. The house is a white and pink-colored residence with black shudders [sic]. At the end of the driveway there

is a covered car port. From the concrete driveway, which is located on the left side of the residence, is a side entrance door. There is a storm door and a solid white door with four small windows in the front of the house facing Rippetoe Ave.

YOU ARE THEREFORE COMMANDED TO MAKE IMMEDIATE SEARCH OF THE AFORESAID PERSON AND PREMISES FOR THE HERETOFORE DESCRIBED PROPERTY AND TO BRING IT FORTHWITH BEFORE ME.

This the 8 day of May, 2007.
s/John Dugger, Judge
Issued this 8 day of May, 2007 at 9:12 A.M., to Chris Blair, executing officer.

Defendant attacks the validity of the search warrant in the following particulars:

(1) The search warrant directs the executing officer to search the premises of 893 Rippetoe Street. Defendant points out that there is no Rippetoe Street in Morristown, Tennessee; there is only Rippetoe *Avenue*.

(2) The search warrant contained no specified time limit for its execution, contrary to Rule 41(e)(2)(A) of the Federal Rules of Criminal Procedure.

(3) Detective Blair's affidavit did not state probable cause for the issuance of the search warrant.

Each of the foregoing issues will be discussed in the same order.

***IS THE REFERENCE IN JUDGE DUGGER'S SEARCH WARRANT TO RIPPETOE STREET, WHEN THE ACTUAL NAME OF THE ROADWAY IS RIPPETOE AVENUE, A FATAL DEFECT?***

Of all the issues presented by the defendant, this is the easiest, by far. Detective Blair's affidavit refers to the premises as "893 Rippetoe Street" in most instances, but not all. It is noted that in ¶ 6 of his affidavit, he refers to 893 Rippetoe *Avenue*. Similarly, Judge Dugger's warrant refers to 893 Rippetoe Street in several places, and then in other places refers to

Rippetoe Avenue. Thus, both Detective Blair and Judge Dugger used "Street" and "Avenue" interchangeably. It is true, as defendant argues, that the Fourth Amendment to the United States Constitution requires that search warrants particularly describe the place to be searched. *See, e.g., Mapp v. Ohio*, 367 U.S. 643, 655 (1961). A search warrant satisfies the "particularity requirement" of the Fourth Amendment "if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended [to be searched]." *Steele v. United States*, 267 U.S. 498, 503 (1925). As defendant's brief points out, there is no Rippetoe Street in Morristown, Tennessee; there is only Rippetoe Avenue. Technically, there is no difference between streets and avenues other than their respective directions of travel. In the larger metropolitan areas, streets run one direction, whereas avenues cross those streets at right angles. In smaller municipalities this technical nicety rarely is observed; often the designation of "avenue" is given to a particular roadway for no apparent reason. In any event, the sporadic references to 893 Rippetoe Avenue as 893 Rippetoe Street is of no significance. The only issue is whether that description would enable the executing officer to find and search the correct premises, as opposed to searching a *wrong* address. As already noted, there is no Rippetoe Street in Morristown, so it would have been physically impossible to search 893 Rippetoe Street; if anything was going to be searched, it had to be 893 Rippetoe Avenue. Moreover, both the affidavit and Judge Dugger's warrant sometimes referred to 893 Rippetoe Avenue, clearly indicating that both men knew exactly what was to be searched. Moreover, paragraph 6 of Detective Blair's affidavit, and Judge Dugger's warrant, contained explicit and detailed driving directions to 893 Rippetoe Street

5

(or Avenue). If there were both a Rippetoe Avenue and a Rippetoe Street in Morristown, it would be impossible to follow those driving directions to both 893 Rippetoe Avenue and 893 Rippetoe Street. Additionally, the affidavit and warrant contained photographs of the premises to be searched. There simply was no way that the wrong premises could be searched. In *United States v. Pelayo-Landero*, 285 F.3d 491 (6th Cir. 2001), the Sixth Circuit upheld a search warrant, notwithstanding that the street name and number in the warrant were inaccurate, because the description of the premises to be searched was sufficiently detailed that the executing officers could not mistakenly search the wrong place. That same is true with respect to the description in the subject warrant.

### *IS IT FATAL TO THE WARRANT THAT IT CONTAINED NO TIME WITHIN WHICH THE WARRANT WAS TO BE EXECUTED?*

As an initial matter, it should be pointed out that defendant's suggestion that this was a *federal* search warrant signed by a state judge is incorrect. This was a state warrant, issued by a state judge.

Rule 41(e)(2)(A)(i) of the Federal Rules of Criminal Procedure requires that a search warrant "must command the officer to: (1) execute the warrant within a specified time no longer than 10 days [and] (2) execute the warrant during the daytime . . . ." Firstly, this Rule is a procedural matter rather than a constitutional right. *See, e.g., United States v. Searp*, 586 F.2d 1117 (6th Cir. 1978) cert. denied, 440 U.S. 921 (1979). The warrant was issued by Judge Dugger on May 8, 2007, at 9:12 a.m. It was executed at 10:24 a.m. that same day. The Tennessee Rules of Criminal Procedure, which governed the issuance of this search warrant,

requires only that "the search warrant shall command the law enforcement officers to search promptly . . ." Tenn.R.Crim.P. 41(c)(2)(B). In this regard, in the last sentence of the warrant, which is in larger typeface and entirely in capital letters, Judge Dugger directed Detective Blair "to make *immediate* search" of the premises. (italics supplied). And that is precisely what Detective Blair did; he executed the warrant one hour and ten minutes after its issuance, and he did so in the daylight hours. Not only was there no constitutional violation, there was no procedural violation as far as Rule 41 of the Tennessee Rules of Criminal Procedure is concerned.

### *DID DETECTIVE BLAIR'S AFFIDAVIT STATE PROBABLE CAUSE?*

In paragraph 4 of Detective Blair's affidavit, he states that, based on his training and experience, he believes that his recitations in paragraphs 2 and 3 of his affidavit state probable cause. This statement of opinion by Detective Blair, of course, adds nothing to the probable cause equation and will not be discussed further. If the affidavit provides probable cause, it is on the basis of paragraphs 2, 3, and 5 of his affidavit.

Paragraph 2 of the affidavit describes a narcotics transaction between an undercover agent with the Morristown Police Department Narcotics/Vice Division and a Hispanic male known as "Marguerito." A drug transaction occurred in front of the Las Palmitas convenience store on Lincoln Avenue in Morristown, which was "monitored and controlled" by narcotics detectives. Additionally, the undercover agent was equipped with a listening device which allowed other agents to monitor the transaction. The undercover agent purchased 4 1/2 ounces of cocaine from Marguertio with currency that had been photocopied. Thus, the essence of

paragraph 2 is that law enforcement agents observed and recorded a drug sale by Marguerito to an undercover police officer.

It is paragraph three of the affidavit that really is the heart of the defendant's argument that the affidavit fails to state probable cause to search 893 Rippetoe Street (Avenue). This paragraph recites that Marguerito had been observed coming from the residence at 893 Rippetoe Street and then going to the location of the drug transaction described in paragraph 2, and that immediately after that drug transaction Marguerito returned to 893 Rippetoe Street. Defendant forcefully points out that no where in paragraph 3 does Detective Blair identify the person who observed Marguerito coming from and then returning to 893 Rippetoe Street. Further, defendant argues that no where in paragraph 3 does Detective Blair vouch for the reliability of the unnamed individual who made these observations.

The First Amendment to the Constitution requires that the affidavit filed in support of a search warrant must describe the relationship between the criminal conduct and the place to be searched; this of course is generally referred to as the "nexus" between the described criminal conduct and the place to be searched. *See, e.g. United States v. Miggins*, 302 F.3d 384, 393 (6th Cir.) cert. denied, 537 U.S. 1130 (2002). On the other hand, the affidavit must be interpreted in a commonsensical manner. *See, e.g., United States v. Davidson*, 936 F.2d 856 (6th Cir. 1991); *United States v. Seta*, 669 F.2d 400, 402 (6th Cir. 1982). Reading paragraph 3 commonsensically, it is apparent that Marguerito's comings and goings from 893 Rippetoe Street were observed by the undercover police officer described in paragraph 2, or at least by another undercover officer working in conjunction with the former. If this affidavit

had been presented to this court in the first instance, out of an abundance of caution this magistrate judge would have inquired as to the identity of the observing party and instructed the affiant to add that information to his affidavit. Nevertheless, that cautionary inclusion notwithstanding, the undersigned is of the opinion that it is apparent that the observing individual was an undercover police officer with the Morristown Police Department, upon whose observation and reliability Detective Blair, and ultimately Judge Dugger, legitimately could rely.

Thus, paragraph 2 advised Judge Dugger that Marguerito had sold 4 1/2 ounces of power cocaine for $3,300 in marked currency. Paragraph 3 told Judge Dugger that Marguerito came to the drug transaction from 893 Rippetoe Street and, after the transaction was concluded, he returned to the same house. It is to be reasonably expected that a drug dealer will have in his dwelling the stock and tools of his trades - drugs, drug paraphernalia, records, packaging materials, etc. *See, e.g., United States v. Davidson*, 936 F.2d 856 (6th Cir. 1991), ("In the case of drug dealers, evidence is likely to be found where the dealers live." *Id.* at 860.)

Again, common sense, not hyper-technical standards, is to be used in determining probable cause, *United States v. Seta, supra*.

> Technical requirements of elaborate specificity [for search warrant affidavits] once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

*United States v. Ventresca*, 380 U.S. 102, 108 (1965).

Paragraph 3 of the affidavit, as already suggested, could have been better drafted. Nevertheless, Judge Dugger obviously was of the opinion that the observer mentioned in that paragraph was an undercover police officer, and this court would have made the same determination.

## *CONCLUSION*

The court respectfully recommends that the motion to suppress be DENIED.[1]

Respectfully submitted,

                                              s/ Dennis H. Inman
                                            United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).